**DECLARATION OF CARLA REXING**

**IN SUPPORT OF VERIFIED COMPLAINT**

I, Carla Rexing, provide the following information, under the penalty of perjury as provided by 28 U.S.C. § 1746, and declare that the following is true and correct to the best of my knowledge, information and belief.

**A.      Affiant's Background**

1.      I have been a Special Agent with the Federal Bureau of Investigation since May 2017. Prior to that time, I was an intelligence analyst with the FBI from May 2009 through May 2017 assisting in investigations of counterintelligence, criminal, cyber, and terrorism threats. I am currently assigned to the FBI Memphis Division, Nashville Resident Agency's Violent Crime Gang Task Force, and investigate federal crimes within the Middle District of Tennessee.  The federal crimes I am assigned to investigate include, but are not limited to, violations of 21 U.S.C. §§ 841 and 846 (drug trafficking) and 18 U.S.C. §§ 1956 & 1957 (money laundering).

**B.      Pertinent Federal Statutes and Regulations**

2.      The following Federal criminal statutes are pertinent to this Affidavit:

   a.      21 U.S.C. § 841 provides that it is "unlawful for any person knowingly or intentionally—(1) to manufacture, distribute or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance. . ."

   b.      21 U.S.C. § 846 makes it unlawful for any person to attempt to commit a violation of 21 U.S.C. § 841.

3.      The following Federal civil forfeiture statute is pertinent to this affidavit:

   a.      21 U.S.C. § 881(a)(4) provides for forfeiture to the United States of "conveyances . . . which are used, or are intended for use, to transport, or in any manner facilitate the transportation, sale, receipt, possession or concealment of [controlled substances]"

b.      21 U.S.C. § 881(a)(6) provides for forfeiture to the United States of "all monies . . . or other things of value furnished or intended to be furnished by any person in exchange for a controlled substance . . . in violation of this subchapter, all proceeds traceable to such an exchange, and all moneys . . . used or intended to be used to facilitate" such a violation.

**C.      Items Sought for Forfeiture**

4.      The United States seeks the forfeiture of the following property:

a.      One Recreational Vehicle Trailer VIN 5NHUHAV20JW077666 ("Taco Stand");

b.      One 2007 Toyota Tundra VIN 5TFJV52157X001736 ("Toyota Tundra"); and

c.      approximately $8,143 United States currency ($8,143).

The Taco Stand, Toyota Tundra and the $8,143 are collectively referred to as the "Defendant Property".

**D.      Basis of Forfeiture**

5.      Pursuant to 21 U.S.C. § 881(a)(4), the Toyota Tundra and the Taco Stand are forfeitable as a conveyance which is used, or intended for use to transport, or to facilitate in any manner the transportation, sale, receipt, possession, or concealment of a controlled substance manufactured, distributed, dispensed, or acquired in violation of 21 U.S.C. § 841 or 21 U.S.C. § 846.

6.      Pursuant to 21 U.S.C. § 881(a)(6), the $8,143 is forfeitable as monies or thing of value furnished or intended to be furnished by any person in exchange for a controlled substance in violation of 21 U.S.C. § 841 or 21 U.S.C. § 846, proceeds traceable to such an exchange and moneys used or intended to be used to facilitate such a violation.

**E.    Basis of Information**

7.    The information in this Affidavit was obtained through my personal observations, training and experience, information gathered during interviews of and conversations with civilians and other law enforcement officers, and written reports and investigations conducted by other law enforcement officers.  Conversations are summarized unless in quotations. I have not included every item of information known to me concerning the Defendant Property and the facts surrounding this Affidavit, but only those relevant to a determination that the Defendant Property is subject to forfeiture.

**F.    Facts**

*Background*

8.    Since at least October 2019, law enforcement officers from multiple federal and state agencies have been investigating a drug trafficking organization ("DTO") believed to be controlled by Arturo Peraira-Jimenez ("Peraira-Jimenez"), aka "Juan". During the investigation of the Jimenez DTO, law enforcement learned Rafael Jimenez, Jr. ("Jimenez Jr."), Betzabel Gutierrez-Lima ("Lima"), and other individuals played significant roles within the DTO. Members of the DTO were responsible for distributing multi-kilograms of methamphetamine and cocaine in the Middle District of Tennessee.

9.    The following non-inclusive actions occurred in relation to the DTO in the Middle District of Tennessee:

    a.    On or about October 3, 2019, the controlled purchase of an ounce of cocaine in Antioch, Tennessee, was arranged by law enforcement through a controlled phone call with Jimenez Jr. ; and

3

b. On or about October 10, 2019, the controlled purchase of four ounces of cocaine in Nashville, Tennessee, was arranged through a controlled call with Jimenez, Jr.

c. On or about December 5, 2019, the controlled purchase of one-quarter kilogram of cocaine in Antioch, Tennessee, was arranged through a controlled phone call with Jimenez, Jr.;

d. On or about January 9, 2020, the controlled purchase of approximately one ounce of methamphetamine in Nashville, Tennessee, from Peraira-Jimenez;

e. On or about February 5, 2020, the controlled purchase of approximately one pound of methamphetamine in Antioch, Tennessee, was arranged through a controlled phone call with Peraira-Jimenez; and

f. On or about March 17, 2020, the controlled purchase of approximately four and one-half ounces of cocaine in Antioch, Tennessee, from Jimenez Jr. and Lima.

10. Beginning in May 2020, several state court orders authorized the interception of wire and electronic communications of an additional five (5) phone numbers utilized by the Jimenez DTO.

*The Taco Stand*

11. On or about May 10, 2020, at approximately 3:45PM, a call was intercepted between Jimenez Jr. and Lima. Lima is a known to be a courier for the DTO. Jimenez Jr. is a multi-kilogram quantity distributor for the DTO.

4

12.     During the call, Jimenez Jr. directed Lima to go see the hotel guy and then to meet Jimenez Jr. at his father's (Peraira-Jimenez) taco stand for the purpose of giving Lima "jefes". Jimenez Jr. also directs Lima to bring the money as well.

13.     Based on my training and experience, I believe that "jefes" is a reference to narcotics.  I know that it is common for drug traffickers to utilize coded language when discussing illicit activity in order to prevent detection by law enforcement.

14.     Later on May 10, 2020, at approximately 5:03PM, a call was intercepted between Jimenez Jr. and Lima. Jimenez Jr. told Lima that a friend was going to arrive at the Taco Stand where they had just met. Jimenez Jr. said that the individual was wanting a hard one and would be driving a gray Honda.

15.     Based on my training and experience, I believe that a "hard one" refers to either crack (or a solid form of narcotics) or cocaine that is still pressed. I know that it is common for drug traffickers to utilize coded language when discussing illicit activity in order to prevent detection by law enforcement.

16.     On May 17, 2020, at approximately 1:32PM, a call was intercepted between Jimenez Jr. and an unidentified male. Jimenez Jr. told the individual he was at the Taco Stand at 2408 Antioch Pike and that the individual would see Jimenez Jr.'s vehicle when he pulled up. At 2:06PM on that same day, the unidentified male advised Jimenez Jr. that he was at the Taco Stand.

17.     On May 24, 2020, at approximately 4:13PM, a call was intercepted between Jimenez Jr. and Juan (a narcotics customer) during which Jimenez Jr. told Juan that he was in front of the Taco Stand.

18.     On May 24, 2020, at approximately 7:24PM, a call was intercepted between Peraira-Jimenez and Tomas. Tomas said he was at the Taco Stand, and Periara-Jimenez asked where Junior was. Tomas stated Junior went to pick up some stuff and would be back.

19.     Based on the facts of this investigation, I know that Junior is a reference to Jimenez Jr.

20.     Later on May 24, 2020, at approximately 7:40PM, a call was intercepted between Peraira-Jimenez with an unidentified male. Peraira-Jimenez asked why the male was where he was at, knowing it was 'hot' in the area. Peraira-Jimenez then told the male to go over to the Taco Stand instead.

21.     On May 26, 2020, various calls were intercepted between Jimenez Jr. and Lima. In one of those calls, Jimenez Jr. asks Lima how far she was from the Taco Stand because Marcos was there and would give her a box.

22.     Based on my training and experience, I believe that a box is in reference to illicit contraband. I know that it is common for drug traffickers to utilize coded language when discussing illicit activity in order to prevent detection by law enforcement.

23.     Based on my training, experience, and the facts of this investigation, I believe that the Taco Stand was utilized as a facilitation platform to store and distribute illicit narcotics, as well as to collect illicit proceeds.

### The Toyota Tundra

24.     An intercepted conversation led law enforcement on or about April 16, 2020, to a location in the Middle District of Tennessee where Jimenez Jr. and Lima were planning to meet to exchange controlled substances or illegal proceeds from the sale of controlled substances.

25. Agents observed the white Toyota Tundra (registered to Jimenez Jr.) at the planned location. The Toyota Tundra left the area at approximately the same time that a call was intercepted between Jimenez Jr. and Lima.

26. Based on my training and experience, and the facts of this investigation, I believe that the Toyota Tundra left the location because the occupants of the vehicle detected a law enforcement presence at that location.

27. On June 10, 2020, the FBI assisted with the execution of a Tennessee State search warrant at Jimenez, Jr's residence located at 406 Stonetree Drive, Smyrna, Tennessee. Several vehicles, including the Toyota Tundra, were located on the premises.

28. Based on my training and experience, I know that drug traffickers keep information, drugs, proceeds of illegal drug trafficking and contraband at secure locations such as their residences.

29. During the search of the residence and vehicles on the premises, Agents located drug trafficking related contraband.

30. Under the direction of an FBI Task Force Officer Brad Kessler a trained, reliable, and certified narcotics detection canine ("Havoc") conducted a free air sniff of the Toyota Tundra that was located in the driveway behind the residence.

31. Havoc showed an alert to the Toyota Tundra, which indicated an odor of a controlled substance on or about the Toyota Tundra.

32. Based on my training and experience, I know that when a trained, reliable and certified narcotics detection canine alerts to a vehicle, there is probable cause to believe that the vehicle contains a controlled substance.

7

33. A search of the Toyota Tundra revealed approximately four (4) bags with a package weight of approximately 530 grams containing a green leafy substance suspected to be marijuana.

34. Based on my training, experience, and the facts of this investigation, I believe that the Toyota Tundra was utilized as a facilitation platform to store and distribute illicit narcotics.

### *$8,143.00 in United States Currency*

35. On June 10, 2020, during the execution of the State search warrant at 406 Stonetree Drive, Smyrna, Tennessee, United States currency was located in the master bedroom along with numerous cell phones, a firearm, and ammunition. The currency was seized as drug trafficking proceeds.

36. Subsequently, Loomis, a cash management business determined the United States currency to be $8,143.

37. Jimenez Jr. was present at the residence during the execution of the search warrant. After being advised of his rights pursuant to *Miranda*, Jimenez Jr. stated he only sold marijuana or "green," and there were several pounds of it in the residence.

38. Based on my training and experience, drug trafficking is a cash business. Further drug traffickers commonly use cash to pay for personal living expenses, entertainment expenses, and other purchases. Therefore, drug traffickers have cash readily available and accessible.

39. Based on my training and experience, it is common for drug distributors and their co-conspirators to utilize more than one cell phone to coordinate, facilitate, and/or conduct drug transactions; further the overall drug conspiracy; and to avoid law enforcement detection.

40. Based on my training and experience, the location of the $8,143 in relation to the cell phones, firearm and ammunition, and the facts of this case, I believe that the $8,143 is monies furnished or intended to be furnished by any person in exchange for a controlled substance in

violation of 21 U.S.C. § 841 or 21 U.S.C. § 846, proceeds traceable to such an exchange, and moneys used or intended to be used to facilitate such a violation

**G.    Conclusion**

41.    Based on my training, experience, and the facts of this investigation, this was an ongoing criminal conspiracy to distribute cocaine, methamphetamine, and other illegal narcotics, of which Jimenez Jr. and his associates were a part. This conspiracy has been ongoing since October 2019.

42.    Based upon the foregoing, there is a reasonable belief that there is a substantial connection between the Defendant Property and illegal drug trafficking in violation of 21 U.S.C. § 841 and 846.

43.    Based on the foregoing, my experience and training, and this investigation, I believe the facts support a reasonable belief that the $8,143 is moneys furnished or intended to be furnished by any person in exchange for a controlled substance, proceeds traceable to such an exchange, and moneys used or intended to be used to facilitate any violation of 21 U.S.C. § 801, et seq., including 21 U.S.C. § 841 (illegal drug trafficking) and 21 U.S.C. § 846 (attempted drug trafficking).

44.    Based on the foregoing, my experience and training, and this investigation, I believe the facts support a reasonable belief that the Toyota Tundra and the Taco Stand are conveyances which were used, or intended for use, to transport, or facilitate the transportation, sale, receipt, possession, or concealment of controlled substances, products, equipment, or other items related to drug trafficking in violation of 21 U.S.C. § 801, et seq., including 21 U.S.C. § 841 (illegal drug trafficking) and 21 U.S.C. § 846 (attempted drug trafficking).

45.    The Defendant Property is therefore forfeitable to the United States pursuant to 21 U.S.C. § 881(a)(4) and (a)(6).

I declare under the penalty of perjury as provided by 28 U.S.C. § 1746 that the foregoing

is true and correct to the best of my knowledge.

SPECIAL AGENT CARLA REXING
FEDERAL BUREAU OF INVESTIGATION